**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
TRAVELERS INDEMNITY CO.,

        Plaintiff,

   - against -

LIBERTY MEDICAL IMAGING
ASSOCIATES. P.C., et al.,

        Defendants.
--------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 07-2519 (CPS) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

   Plaintiff Travelers Indemnity Co. ("Travelers"), which underwrites automobile insurance policies in New York, initiated this action to seek remedies arising from claims that several medical service corporations (the "MSCs") submitted to it despite being ineligible to do so under New York's "no-fault" insurance laws and regulations. Docket Entry ("DE") 1 (Complaint); *see* N.Y. Ins. Law § 5101, *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 11, § 65, *et seq.* Travelers claims that the MSCs, together with certain companies that controlled them and associated individuals, engaged in a fraudulent scheme to evade the no-fault regime's eligibility requirements, and that in doing so they defrauded Travelers, obtained unjust enrichment, and continue to subject Travelers to meritless litigation over outstanding claims. It therefore seeks compensatory damages, as well as punitive damages and declaratory relief. Travelers settled with several defendants and now seeks a default judgment against the rest. DE 80. On October 20, 2008, the Honorable Charles P. Sifton referred the matter to me for a Report and Recommendation. DE 79. I now make my report and, for the reasons set forth below, respectfully recommend that the court grant the request for compensatory damages and interest (the latter in a reduced amount) but deny the requests for punitive damages and declaratory relief.

I.    Background

Under New York's no-fault regime, an insured may assign her claim for a covered medical expense to her health care provider rather than seek reimbursement directly from the carrier.  Pursuant to such an assignment, a health care provider such as a medical services corporation may submit a claim directly to an insurer and receive payment for necessary medical services rendered.  N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.11.  However, a fraudulently incorporated provider is not eligible to collect such payments.  *Id.* § 65-3.16(a)(12); *State Farm v. Mallela*, 794 N.Y.S.2d 700 (2005) (answering question certified by federal appellate court and holding that a New York insurance carrier may withhold payments for medical services submitted by fraudulently incorporated enterprises to which patients have assigned their claims).  Of relevance to the instant dispute, New York law requires all MSCs to be owned and controlled exclusively by physicians.  N.Y. Bus. Corp. Law  § 1507 (permitting a "professional service corporation [to] issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice").  As a result, MSCs that are not actually owned and controlled by licensed physicians are fraudulently incorporated, and therefore may not submit assigned claims for no-fault insurance benefits.

Travelers asserts it has been defrauded by just such a practice.  Specifically, it alleges that the defendants, along with the late Dr. Stephen Zinn ("Zinn"), entered into a "massive fraud scheme[,]" Complaint ¶ 40, in which Zinn held himself out as the owner of the defendant MSCs for purposes of incorporating them even though each such MSC was for all practical purposes owned and controlled by one or more of the remaining defendants, none of whom was a licensed physician.  Each of the defendant MSCs had entered into a management and consulting

agreement with one of the defendant management corporations, pursuant to which the management corporation exercised total control over the MSC and reaped all of its profits. The management corporations, and the individual defendants who controlled them, used these fraudulently incorporated MSCs as a conduit to collect no-fault benefits from Travelers for radiology services performed at imaging centers they owned. Complaint ¶¶ 40-46. In furtherance of the alleged scheme, the MSCs submitted state-mandated "NF-3" claim forms (formally known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" forms). These documents included a representation that the submitting MSC was properly licensed and therefore eligible to receive no-fault benefits. Complaint ¶¶ 32, 109-110. Travelers, under a statutory and contractual obligation to promptly and faithfully process such claims within 30 days, relied on these facially valid documents. Complaint ¶¶ 111-12. As a result of the alleged scheme, Travelers claims that it paid the six MSC defendants over one million dollars in no-fault benefits to which they were not entitled.[1]

---

[1] As an alternate theory for recovering part of those payments, Travelers also claims that even if they were eligible to submit no-fault claims as a general matter, the MSCs necessarily overcharged Travelers by submitting claims for services not provided by their own employees. Travelers asserts that the New York Workers Compensation Fee Schedule, which governs claims for the reimbursement for radiology services, allocates 20 percent of the reimbursable fee to the professional component of radiology services (the analysis of the films and the preparation of the report) and the remaining 80 percent to the technical component (the performance of the test). However, Zinn was the only employee of each of the six MSCs. Even assuming that Zinn personally performed the professional component of the radiology services for which the MSCs submitted claims, he clearly did not perform the radiology tests themselves. Because the latter technical services were inevitably provided by independent contractors, the MSCs were ineligible to receive no-fault compensation for the corresponding portions of the associated fees. *See* Complaint ¶¶ 37-39. Because I conclude that Travelers has established the defendants' liability on its primary theory of ineligibility arising from fraudulent incorporation, I do not address the merits of this alternate claim. Nor am I in a position to do so, as Travelers has failed to submit a fee schedule among its supporting papers.

Travelers filed its Complaint, which invokes this court's diversity jurisdiction, on June 22, 2007. It asserted claims of common law fraud and unjust enrichment against a broad range of MSCs, management corporations, and individual participants in the alleged scheme described above; and on the basis of those claims it sought compensatory, declaratory, and injunctive relief with respect to each. Several defendants answered, but many did not. Travelers has since entered into settlement agreements with each defendant who appeared in the matter, as well as with two who originally defaulted. *See* DE 74 at 1; DE 92 at 1 n.1. As the docket reflects, the Clerk entered the defaults of the remaining defendants on August 30, 2007, and May 19, 2008.

Travelers submitted the instant motion for default judgments on October 10, 2008; it was filed on the docket under seal on October 20, 2008. DE 80.[2] I held an evidentiary hearing on

_____

[2] Travelers seeks to maintain its motion papers under seal because they reveal information about its otherwise confidential settlements with some of the appearing defendants. Specifically, in seeking to justify its claims for compensatory damages against defaulting parties associated with four of the six MSCs, Travelers necessarily acknowledges that such claims must be offset by the amounts it received in settlement from appearing parties associated with the same MSCs. While I appreciate the value of confidentiality to the settling parties – none of them has asked to unseal the record, and several have affirmatively asked the court not to do so, *see* DE 92 – I also recognize that such secrecy has its costs. First, it can impair the rights of any defaulting parties who may wish to challenge my recommendation on the ground that I may not have properly accounted for the offsets to which they are entitled. Second, because information about the amount of the settlements is an essential part of the analysis of the instant default motion, maintaining the secrecy of the record also undermines the public's interest in the openness of judicial proceedings and its confidence in the reliability of the outcome. Because "a party engaged in litigation is not entitled to insist on confidentiality[,]" *McCauley v. Trans Union, L.L.C.*, 402 F.3d 340, 342 (2d Cir. 2005) (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) ("The public's stake in the propriety and particulars of the court's adjudication does not evaporate upon the parties' subsequent decision to settle.")), I therefore respectfully recommend that the court unseal the record in its entirety. Nevertheless, because the decision is ultimately the court's to make, I have written this recommendation in a way that avoids stating the settlement amounts; instead, I merely certify, based on my review of the record, that those settlement amounts do not exceed the amounts by which Travelers has reduced its request for relief from the total amount of damages it has proved with respect to each MSC.

December 16, 2008, during which Travelers presented one witness in support of its claims for damages, interest, and declaratory relief. DE 90. At that hearing, Traveler explicitly withdrew its request for injunctive relief. DE 93 (Transcript of Hearing) ("Tr.") 33-35.

In its motion, Travelers seeks relief against each of six defaulting MSCs, as well as the management corporations associated with each and the individuals who owned such management corporations (to the extent such entities and persons have defaulted and have not settled with Travelers). Specifically, the relevant defaulting parties are:

- Liberty Medical Imaging Associates, P.C. d/b/a Richmond Hill Imaging ("Liberty");

- OMF Medical Imaging, P.C. ("OMF"), and its management corporation TOL Management Co. ("TOL") (collectively, the "OMF Defendants");[3]

- Queens Diagnostic Imaging, P.C. ("Queens"), its management corporation BJ Management LLC ("BJ"), and BJ's owner Bernard Joseph ("Joseph") (collectively, the "Queens Defendants");

- Ocean Diagnostic Imaging, P.C. ("Ocean");

- Big Apple Medical Diagnostics, P.C. ("Big Apple"), its management corporation M & R Management of New York ("M&R"), and M&R's owner Vyacheslav Sadykov, also known as "Steve Sadykov" ("Sadykov") (collectively, the "Big Apple Defendants"); and

- Metro Diagnostic Imaging, P.C. ("Metro").

With respect to each MSC and any associated management corporation or individual defendant, Travelers seeks a judgment in the amount of the payments it made to that MSC during the relevant period together with prejudgment interest and punitive damages (with all related

---

[3] Travelers named Anatoli Merenzon ("Merenzon") as a defendant based on his alleged ownership of TOL, but never served the Complaint on him and therefore does not seek a default judgment against him. Under the circumstances, I respectfully recommend that the court dismiss the claims against Merenzon for failure to prosecute.

defaulting defendants being held jointly and severally liable for any such monetary relief). It also seeks a declaration that each MSC has no right to receive payment for any pending bills it has submitted to Travelers. *See* DE 80, [proposed] Default Judgment at 2-5.

II.     Discussion

A.      Choice of Law

A federal court sitting in diversity must "apply the substantive law of the state to which the forum state, New York, would have turned had the suit been filed in state court." *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 280 (2d Cir. 1981) (citation omitted); *see also Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (noting that a district court sitting in diversity applies the choice of law rules of the forum in which it sits). For tort claims such as are asserted here, New York applies an interest analysis, giving "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (citing *Cooney v. Osgood Mach., Inc.*, 595 N.Y.S.2d 919, 922 (1993)). New York's interest in this matter appears to be greater than that of any other jurisdiction. The MSCs were incorporated in New York, and Travelers is authorized to conduct business in New York and to issue policies of automobile insurance in New York, out of which policies the current action arises. I therefore conclude that New York law applies. *See State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 228 (E.D.N.Y. 2008).

B.    Liability On The Tort Claims

1.    Default

When a party is found to be in default, the court must accept as true all allegations in the well-pleaded complaint, except those pertaining to the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); Fed. R. Civ. P. 8(d). However, entry of default does not necessarily entitle the moving party to the relief it seeks. *Agamede Ltd. v. Life Energy and Technology Holdings, Inc.*, 2007 WL 201167, at *1 (E.D.N.Y. Jan. 23, 2007). In determining whether a final default judgment should be granted, the court retains discretion to consider whether the facts alleged state a valid cause of action. *Id.* (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

2.    Common Law Fraud

To state a cause of action for common law fraud under New York law, the plaintiff must allege a misrepresentation of fact that was false and known to be false by the defendant, that the representation was made for the purpose of inducing the other party to rely upon it, and that the other party justifiably did so rely, causing injury. *See Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 80 (1996); *Ochs v. Woods*, 221 N.Y. 335, 338 (1917) (elements of common law fraud claim are "representation, falsity, scienter, deception and injury"); Restatement, Torts 2d, § 525; 60A N.Y. Jur.2d Fraud and Deceit § 14.

The Complaint's well-pleaded allegations suffice to state a valid cause of action for common law fraud. Travelers has alleged that the defendants falsely represented to Travelers on the NF-3 forms that the MSCs were properly licensed and eligible to receive no-fault benefits;

that they made this misrepresentation knowingly; that they did so for the purpose of inducing Travelers, in reliance on the misrepresentation, to pay them for services for which they were not entitled to receive payment under New York's no-fault regime; that Travelers justifiably relied on the misrepresentation; and that Travelers was injured by making payments to the MSCs. *See* Complaint ¶¶ 119-22 (allegations of common law fraud as to Liberty); ¶¶ 131-34 (same as to OMF Defendants); ¶¶ 143-46 (same as to Queens Defendants); ¶¶ 155-58 (same as to Ocean); ¶¶ 167-70 (same as to Big Apple Defendants); ¶¶ 179-82 (same as to Metro). I therefore respectfully recommend that the court find the defaulting defendants liable on Travelers's common law fraud claims.

### 3. Unjust Enrichment

To state a valid cause of action for unjust enrichment, Travelers must allege that the defendant at issue received a benefit, that it did so at Travelers's expense, and that "'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citing *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (2d Cir. 1983)); see also *Liguori*, 589 F. Supp. 2d at 235-36 (finding unjust enrichment claim sufficiently pleaded, and therefore denying motion to dismiss, in circumstances nearly identical to those of the instant case).

The Complaint's well-pleaded allegations suffice to state a valid cause of action for unjust enrichment. Travelers has alleged that each defaulting defendant received a benefit at its expense in the form of payments that Travelers reasonably believed it was legally obligated to make. It has also alleged that the defendants obtained this benefit thorough their improper, unlawful, and unjust acts; and that the defendants' retention of these payments violates fundamental principles of justice, equity, and good conscience. *See* Complaint ¶¶ 125-29 (allegations of unjust

enrichment as to Liberty); ¶¶ 137-41 (same as to OMF Defendants); ¶¶ 149-53 (same as to Queens Defendants); ¶¶ 161-65 (same as to Ocean); ¶¶ 173-77 (same as to Big Apple Defendants); ¶¶ 185-89 (same as to Metro). I therefore respectfully recommend that the court find the defendants liable on those claims and make permanent its award of a default judgment.

## C. Damages On The Tort Claims

### 1. Compensatory Damages

The defendants' default does not relieve Travelers of its burden of proving its damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155 (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). In support of its application, Travelers presented the testimony of Kathleen Aplin ("Aplin"), a manager in the Medical Investigations Unit at Travelers. Aplin testified that she was responsible for conducting the investigation into the MSCs that resulted in the filing of the Complaint. In support of the claims for damages, Aplin prepared documents known as "TIN runs" by submitting queries for the tax identification information of each defaulting MSC to her employer's computerized system of claim records. The resulting TIN runs reflected the payments that Travelers made to each of the six MSCs between April 4, 2002, and the date of the hearing at which she testified.[4] Tr. 11-13, 14-16. The output of the TIN runs resemble spreadsheets, with each individual payment listed in a separate line. According to Aplin, each line represents a check actually issued by

---

[4] Travelers seeks damages for the period beginning April 4, 2002, because that is the effective date of the regulation on which it bases its legal theory – endorsed by the New York Court of Appeals – that it was entitled not to pay claims submitted by fraudulently incorporated MSCs. *See Mallela*, 794 N.Y.S.2d at 703; *Metroscan Imaging, P.C. v. Geico Ins. Co.*, 823 N.Y.S.2d 818, 821-22 (App. Div. 2006); *Allstate Ins. Co. v. Belt Parkway Imaging, P.C.*, 813 N.Y.S.2d 867, 870-71 (Sup. Ct. 2006).

Travelers and includes, among other information, the name of the MSC, the MSC's tax identification number, the address to which the check was sent, the issue date of the check, and the amount paid by Travelers. If the check was cashed by the recipient, the amount of payment is shown. If the check was not cashed, the amount of payment is shown as "$0.00". Tr. 13-21; DE 80 Ex. 2 (Declaration of Kathleen M. Alpin, with attached TIN run print-outs).

Based on this evidence, I conclude that Travelers has established to a reasonable certainty the amounts it paid to each MSC for which it is entitled to reimbursement, as summarized in the table below.[5] I also certify, based on my review of sealed records, that the amounts that Travelers has received in settlement do not exceed the amounts by which it has voluntarily reduced its claim for purposes of seeking relief from the defaulting defendants.

| MSC | Amount Paid And Subject To Reimbursement | Voluntary Reduction of Claim | Amount Claimed |
| --- | --- | --- | --- |
| Liberty | $261,081.88 | $216,803.41 | $44,278.47 |
| OMF | $180,444.30 | $0.00 | $180,444.30 |
| Queens | $184,405.43 | $0.00 | $184,405.43 |
| Ocean | $364,581.26 | $245,274.26 | $119,307.00 |
| Big Apple | $97,711.91 | $45,000.00 | $52,711.91 |
| Metro | $58,260.48 | $40,000.00 | $18,260.48 |

In some instances, the amount of payments that Liberty demonstrated as being subject to reimbursement was greater than the corresponding amounts set forth in the Complaint. However,

---

[5] To be clear, I am satisfied that Aplin's methodology is sound, but I have not checked the accuracy of the many individual calculations reflected in the exhibits to her declaration. To the extent any party believes Aplin made an arithmetical error, it is of course free to identify any such specific error and the precise effect on the appropriate amount of damages, in lodging any objections to this Report and Recommendation.

because the amount of damages that Travelers now seeks as to each defendant does not exceed the corresponding demand for judgment in the Complaint, those differences are of no moment and Travelers may properly seek the relief it specifies without running afoul of Federal Rule of Civil Procedure 54(c).

With respect to the payments that Travelers made to OMF, Queens, and Big Apple, respectively, Travelers seeks to have the court hold the defaulting defendants associated with each jointly and severally liable with the corresponding MSC. Travelers is entitled to such relief if it can establish, with respect to each such group of defendants, that it suffered an indivisible injury, and that all relevant defendants actually caused the injury. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab.*, 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006) (citing *Slater v. Mersereau*, 64 N.Y. 138, 146 (1876)). When "two or more causes combine to produce ... a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm ... each of the causes is charged with responsibility for the entire harm." *Mazyck v. Long Island R.R.*, 896 F. Supp. 1330, 1333 (E.D.N.Y. 1995) (citation omitted).

I conclude that Travelers has satisfied that burden. For example, it has established (by virtue of the allegations in its well-pleaded complaint and the defendants' default) that the Queens MSC is owned and controlled by the BJ corporation, which in turn is owned by Joseph. Those three defendants acted jointly in bringing about the harm that Travelers suffered by making needless payments to the Queens MSC. Morever, it would be impractical, particularly in the absence of discovery occasioned by the defendants' default, to try to determine the extent to which each single defendant enjoyed the benefit of the fraud that they perpetrated together. The

11

same is true with respect to the OMF Defendants as a group and the Big Apple defendants as a group. I therefore respectfully recommend that the court hold each such group of defendants jointly and severally liable for the damages that they caused. Accordingly, I respectfully recommend that the court award Travelers damages in the following amounts:

- $44,278.47 against Liberty;

- $180,444.30 jointly and severally against the OMF Defendants;

- $184,405.43 jointly and severally against the Queens Defendants;

- $119,307.00 against Ocean;

- $52,711.91 jointly and severally against the Big Apple Defendants; and

- $18,260.48 against Metro.

2.     Interest

In diversity cases, the award of prejudgment interest is a substantive issue, governed here by New York law. *Terwilliger v. Terwilliger*, 206 F.3d 240, 249 (2nd Cir. 2000); *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (applying state law to the question of prejudgment interest in a diversity case). Under New York law, prejudgment interest is generally available. *Terwilliger*, 206 F.3d at 249. Pre-judgment interest is calculated at the *non-compounded* rate of nine percent per annum. N.Y. C.P.L.R. §§ 5001(a), 5004; *see 520 E. 81st St. Assocs. v. New York*, 799 N.Y.S.2d 1, 4 (App. Div. 2005) (as a general rule, statutory pre-judgment interest rate is not compounded). Travelers seeks such interest, measured for ease of calculation from the close of each year in which a particular payment was made through December 31, 2008. For example, for a payment made in March of 2004, interest would only be calculated from December 31, 2004. Tr. 5. Its methodology in this respect is consistent with,

and indeed more generous to the defendants than required by, New York statutory law.  *See* N.Y. C.P.L.R. § 5001(b) ("Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.").

Unfortunately, in calculating the interest it claims, Travelers has *compounded* interest at the statutory rate of nine percent per annum – and it has camouflaged that fact by failing to set out with particularity the amount of interest it seeks.  Thus, for example, Travelers calculated on the basis of the TIN runs that it made a total of $55,463.17 in payments to Big Apple in 2002.  In submitting its evidence in the form of a summary chart, *see* DE 91,[6] Travelers reported the aggregate amount of payments in one column, and then in the next column reported the amount it had calculated as "Principal And Interest - As of 12-31-08 (9%)" – which, for payments made to Big Apple in 2002 it calculated as $93,017.29.  Although Travelers did not provide the calculation that produced that result, I deduce pursuant to the calculation set forth in the margin that it applied a compounded interest rate of nine percent per annum for a period of six years (December 31, 2002 through December 31, 2008) to a principal amount of $55,463.17, resulting in an interest amount of $37,554.12.[7]  The correct amount of interest, using the statutory rate but without compounding, is $29,950.11 as demonstrated by the calculation in the margin.[8]  As a

---

[6]  The relevant portion of DE 91 was submitted in hard copy only.  For the reasons set forth above in footnote 2, I respectfully recommend that it be filed on the electronic docket and made available to the public.

[7]  $55,463.17 \times 1.09^6 = \$93,017.29 = \$55,463.17 + \$37,554.12$.

[8]  $55,463.17 \times 0.09 \times 6 = \$29,950.11$.

result, I have reluctantly had to recalculate the interest to which Travelers is entitled with respect to each relevant year for each MSC. The results are set forth in the following tables.

Interest Calculation With Respect To Liberty

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|---|---|---|
| 2002 | $101,211.37 | $54,654.14 |
| 2003 | $75,193.15 | $33,836.92 |
| 2004 | $30,366.18 | $10,931.82 |
| 2005 | $38,007.88 | $10,262.13 |
| 2006 | $16,303.30 | $2,934.59 |
| 2007 | $0.00 | $0.00 |
| 2008 | $0.00 | $0.00 |
| TOTAL | $261,081.88 | $112,619.60 |

Interest Calculation With Respect To OMF

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|---|---|---|
| 2002 | $0.00 | $0.00 |
| 2003 | $126,389.17 | $56,875.13 |
| 2004 | $27,750.50 | $9,990.18 |
| 2005 | $13,620.84 | $3,677.63 |
| 2006 | $10,948.03 | $1,970.65 |
| 2007 | $1,735.76 | $156.22 |
| 2008 | $0.00 | $0.00 |
| TOTAL | $180,444.30 | $72,669.80 |

## Interest Calculation With Respect To Queens

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|------|---------------------|----------------------------------------|
| 2002 | $11,641.71 | $6,286.52 |
| 2003 | $164,261.29 | $73,917.58 |
| 2004 | $5,977.00 | $2,151.72 |
| 2005 | $2,525.43 | $681.87 |
| 2006 | $0.00 | $0.00 |
| 2007 | $0.00 | $0.00 |
| 2008 | $0.00 | $0.00 |
| TOTAL | $184,405.43 | $83,037.69 |

## Interest Calculation With Respect To Ocean

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|------|---------------------|----------------------------------------|
| 2002 | $131,336.29 | $70,921.60 |
| 2003 | $155,962.53 | $70,183.14 |
| 2004 | $41,506.72 | $14,942.42 |
| 2005 | $27,405.76 | $7,399.56 |
| 2006 | $6,936.58 | $1,248.58 |
| 2007 | $0.00 | $0.00 |
| 2008 | $1,433.38 | $0.00 |
| TOTAL | $364,581.26 | $164,695.29 |

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|------|---------------------|----------------------------------------|
| 2002 | $55,463.17 | $29,950.11 |
| 2003 | $23,435.88 | $10,546.15 |
| 2004 | $7,833.67 | $2,820.12 |
| 2005 | $9,116.60 | $2,461.48 |
| 2006 | $1,862.59 | $335.27 |
| 2007 | $0.00 | $0.00 |
| 2008 | $0.00 | $0.00 |
| TOTAL | $97,711.91 | $46,113.13 |

Interest Calculation With Respect To Metro

| Year | Payments (principal) | Interest (9% per year, not compounded) |
|------|---------------------|----------------------------------------|
| 2002 | $29,830.87 | $16,108.67 |
| 2003 | $19,842.03 | $8,928.91 |
| 2004 | $2,226.52 | $801.55 |
| 2005 | $6,361.06 | $1,717.49 |
| 2006 | $0.00 | $0.00 |
| 2007 | $0.00 | $0.00 |
| 2008 | $0.00 | $0.00 |
| TOTAL | $58,260.48 | $27,556.62 |

I recognize that both my interest calculations and the incorrect ones that Travelers made use as their starting point a principal amount derived from the total amount of damages that Travelers suffered by virtue of the defendants' fraudulent scheme rather than the smaller amounts that I recommend awarding in damages. I conclude that interest should be calculated on the

former amounts because Travelers is entitled to be made whole – including by means of an award of prejudgment interest at the statutorily mandated rate – for the losses the defendants caused. The fact that Travelers is willing to forgive a portion of its damages with respect to some of the defaulting defendants (or that it must do so by offsetting any amounts it may have collected from others by means of a settlement) does not mean that it must forego the corresponding portion of the interest to which it would otherwise be entitled.

Accordingly, based on the foregoing calculations, I respectfully recommend that the court award Travelers prejudgment interest in the following amounts:

- $112,619.60 against Liberty;

- $72,669.80 jointly and severally against the OMF Defendants;

- $83,037.69 jointly and severally against the Queens Defendants;

- $164,695.29 against Ocean;

- $46,113.13 jointly and severally against the Big Apple Defendants; and

- $27,556.62 against Metro.

### 3.  Punitive Damages

When it first filed suit, Travelers requested punitive damages in varying amounts against each group of related defendants; the total amount of such damages it sought was $4,500,000.00. *See* Complaint at 42-44 (prayer for relief, ¶¶ B, D, F, H, J, L).  However, Travelers made no mention of punitive damages in the papers submitted in support of the instant motion, nor did it raise the matter at the evidentiary hearing.  I therefore deem the request for punitive damages to be waived.  Even if Travelers meant to press for such relief, in the absence of any explanation of why the court should impose punitive damages, I recommend that it decline to do so.

D.   Declaratory Relief

Travelers seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202 declaring that the defendant MSCs have no right to receive payment for any pending bills that they submitted to Travelers.  More specifically, Travelers would have the court absolve it of the responsibility to pay any such bills on three grounds.  First, Travelers sought to have any pending bills declared void in their entirety because the MSCs were fraudulently incorporated and therefore ineligible to seek or recover no-fault benefits.  Second, Travelers sought to nullify such pending bills to the extent they seek payment for the technical component of radiology services that the MSCs billed to Travelers even though such services were not provided by employees of the MSCs.  Third, Travelers contends that the MSCs have no right to receive payment because they engaged in unlawful fee-splitting.  Complaint ¶ 118.

In seeking a declaratory judgment, Travelers must prove, as a threshold matter, that the court has jurisdiction to grant such relief.  Such jurisdiction exists "only if there is an actual controversy, which has been defined as one that is real and substantial admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (internal citations omitted).  Declaratory relief is appropriate "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Maryland Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971) (citation omitted); *see also* 28 U.S.C. § 2201.  For the reasons set forth below, I conclude that the court should deny declaratory relief for two reasons.

First, I conclude that Travelers has not established the court's jurisdiction to grant such relief by demonstrating the existence of an actual controversy. If Travelers had pleaded and proved that it remained subject to pending claims for payment by the ineligible MSCs, it would have demonstrated such a live controversy, but that is not what it has done. The only allegation in the Complaint on the matter does no more than make the conclusory assertion that "[t]here is an actual case in [sic] controversy between Travelers and the [MSCs] regarding more than Five Hundred Thousand ($500,000.00) Dollars in fraudulent billing for radiology services that has been submitted to the Travelers." Complaint ¶ 114. By its terms, that allegation does not compel the conclusion that any of the fraudulent bills remain pending, and the Complaint's separate allegations to the effect that Travelers paid far more than $500,000 to ineligible MSCs and that it routinely made such payments within 30 days of receiving a claim, *see* Complaint ¶ 111, tend to undermine the proposition that any such claims remain pending. Moreover, even reading the allegation of "an actual case in controversy" in the light most favorable to Travelers, it remains conclusory in nature. As a result the defendants' default, standing alone, does not serve to establish its truth. *See*, *e.g.*, *Century 21 Real Estate, LLC v. Raritan Bay Realty, Ltd.*, 2008 WL 4190955, * 3 (E.D.N.Y. Sept. 3, 2008) ("a default does not establish conclusory allegations") (citing cases).

Nor does the evidentiary record developed in connection with the instant motion fill the gap. None of the evidence that Travelers has submitted provides any information about, or even demonstrates the existence of, any pending claim for payment by any ineligible MSC. To be sure, counsel for Travelers did mention such claims at the evidentiary hearing, but he provided no details about them, and his statements are in any event not evidence. *See* Tr. 32 (asserting that

the MSCs "continue to pursue collection activity in the New York Civil Court system ... seeking to recover funds that the company didn't pay"); Tr. 33 ("there are cases that are presently pending against the company which haven't been actively litigated").[9]

Second, even if Travelers had succeeded in establishing a live controversy as to which the court could properly grant declaratory relief, I would nevertheless recommend that the court abstain from doing so. In reaching that conclusion, I rely completely on the persuasive analysis set forth in a recent decision in this district. Rather than seek to gild the lily, I simply present the court's analysis as written.

> ... The Declaratory Judgment Act provides district courts with "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton* [*v. Seven Falls Co.*], 515 U.S. [277,] 288 [(1995)]. In other words, this Act gives courts "unique and substantial discretion" in deciding whether to declare the rights of federal litigants. *Id*. at 286. Thus, unlike most actions where a district court has a "virtually unflagging obligation" to exercise jurisdiction, *Colorado River* [*Water Conservation Dist. v. United States*], 424 U.S. [800,] 817 [(1976)], courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton*, 515 U.S. at 282.

> In determining whether the controversy between the parties "can be better settled in the proceeding pending in the state court," *Brillhart* [*v. Excess Ins. Co. of Am.*], 316 U.S. [491,] 495 [(1942)], some of the factors to be considered

---

[9]  I note the only federal decision that Travelers cites as authority for the proposition that "these types of issues are sufficient to warrant the type of declaratory relief sought here," DE 80, Memorandum of Law at 5, is *Perfect Dental PLLC v. Travelers Ins. Co.*, docket no. 04-CV-0586 (DLI) (CLP), Memorandum and Order (E.D.N.Y. Sept. 10, 2007). In that case however – as the caption itself suggests – Travelers sought declaratory relief in its posture as a defendant. Specifically, the declaratory relief it sought was a judgment that it was not required to pay the precise claims for payment for which the plaintiff had sued Travelers in that very case. *See id*. at 1 (noting that Travelers was seeing "a declaratory judgment that the [plaintiffs] are not entitled to receive payment"). As a result, there could be no question about the existence of a live controversy or of the court's jurisdiction to grant declaratory relief – and the court therefore quite understandably did not address that issue.

include: (1) whether the state and federal actions are parallel; (2) the scope of the state court proceeding; (3) the nature of the defenses available in state court; (4) whether the necessary parties have been joined; (5) whether the claims of all parties in interest can be adjudicated in the state court; (6) the order of filing; and (7) the choice of law. *Wilton*, 515 U.S. at 282-83; *Brillhart*, 316 U.S. at 495; *Nat'l Union Fire Ins., Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22-23 (2d Cir. 1997); *Youell v. Exxon Corp.*, 74 F.3d 373, 373-76 (2d Cir. 1996).

The Second Circuit has held that proceedings are parallel for purposes of abstention "when the two proceedings are essentially the same; that is, there is an identity of parties and the issues and relief sought are the same." *Nat'l Union*, 108 F.3d at 22. This federal action is parallel to the pending state court proceedings. Both this action and the state court actions involve the question whether [defendant] Valley is fraudulently incorporated and whether Valley is entitled to be paid for outstanding bills in view of the *Mallela* decision. *Cf. Nat'l Fire Ins. Co. v. Warrantech*, 2001 WL 194903, at *3 (S.D.N.Y. [Feb. 27,] 2001) (holding abstention is appropriate where claims in federal suit are readily assertable as defenses and/or counterclaims in the state suit). In addition, [plaintiff] Allstate and [defendant] Valley are parties in this and the state proceeding. *See Nat'l Union*, 108 F.3d at 22 (the presence of the insurance company and insured in both suits rendered the two actions parallel even though the federal action involved more parties).

Of particular importance here is that the rule of decision in the declaratory judgment cause of action is one of New York, and not federal, law. The absence of federal issues in a declaratory judgment action weighs heavily in favor of abstention. *Nat'l Union*, 108 F.3d at 20-23.

Finally, New York has a strong interest in regulating its no-fault system and "it would be unnecessarily duplicative for this Court to interfere with ongoing state court proceeding[s] and effectively participate in a 'race to res judicata.'" *Troiano v. Mardovich*, 2006 WL 2320517, at *5 (S.D.N.Y. [Aug. 10,] 2006) (quoting *Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, 2005 WL 2044930, *3, (S.D.N.Y. [Aug. 23,] 2005)). "[D]istrict courts routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law." *Travelers Indem. Co. v. Philips Elect. N.A. Corp.*, 2004 WL 193564, at *2 (S.D.N.Y. [Feb. 3,] 2004).

Taking into account these factors and considering the totality of the circumstances, the Court exercises its discretion and abstains from hearing Allstate's ninth cause of action to the extent it seeks a declaratory judgment that Plaintiffs are not required to pay pending or future no-fault claims submitted by Valley.

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 475 F. Supp. 2d 213, 233-34 (E.D.N.Y. 2007), *vacated in part on other grounds on reconsideration*, 555 F. Supp. 2d 335 (E.D.N.Y. 2008).

Based on the persuasive analysis in *Allstate*, which applies with equal force in this case if it is true that Travelers continues to face collection actions by the MSCs in New York State courts, I respectfully recommend that the court deny the request for declaratory relief. As a result, I further respectfully recommend that the court dismiss the Complaint's first cause of action, seeking declaratory relief, both for want of a live case or controversy and as a matter of abstention.

III.    <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court grant plaintiff Travelers Indemnity Company the following relief:

    A.    as to the second and third causes of action, judgment against defendant Liberty Medical Imaging Associates, P.C. d/b/a Richmond Hill Imaging in the amount of $156,898.07, consisting of $44,278.47 in compensatory damages and $112,619.60 in prejudgment interest;

    B.    as to the fourth and fifth causes of action, judgment against defendants OMF Medical Imaging, P.C. and TOL Management Co. jointly and severally in the amount of $253,114.10, consisting of $180,444.30 in compensatory damages and $72,669.80 in prejudgment interest;

    C.    as to the sixth and seventh causes of action, judgment against defendants Queens Diagnostic Imaging, P.C., BJ Management LLC, and Bernard Joseph jointly and severally in the amount of $267,443.12, consisting of $184,405.43 in compensatory damages and $83,037.69 in prejudgment interest;

    D.    as to the eighth and ninth causes of action, judgment against defendants Ocean Diagnostic Imaging, P.C. in the amount of $284,002.29, consisting of $119,307.00 in compensatory damages and $164,695.29 in prejudgment interest;

E.      as to the tenth and eleventh causes of action, judgment against defendants Big Apple Medical Diagnostics, P.C., M & R Management of New York, and Vyacheslav Sadykov, also known as "Steve Sadykov," jointly and severally in the amount of $98,825.04, consisting of $52,711.91 in compensatory damages and $46,113.13 in prejudgment interest; and

F.      as to the twelfth and thirteenth causes of action, judgment against defendant Metro Diagnostic Imaging, P.C. in the amount of $45,817.10, consisting of $18,260.48 in compensatory damages and $27,556.62 in prejudgment interest.

I further recommend that the court dismiss the first cause of action, both for want of any demonstrated actual case or controversy remediable by declaratory relief and as a matter of abstention, and that the court decline to award punitive damages or injunctive relief.

IV.    Objections

I direct the plaintiff to serve a copy of this Report and Recommendation by certified mail on each defaulting defendant from whom it now seeks judgment, and to file proof of service with the court no later than March 17, 2009. Any objections to this Report and Recommendation must be filed with the Clerk no later than March 30, 2009. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); *See* Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
      March 15, 2009

                                      /s/ James Orenstein
                                      JAMES ORENSTEIN
                                      U.S. Magistrate Judge